**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 10-24286-CIV-SEITZ/SIMONTON

SHOWPLACE OF FLAGLER, LLC,

        Plaintiff,

vs.

QUEST DIAGNOSTICS CLINICAL
LABORATORIES, INC.,

        Defendant.

_____/

## ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT

        This matter is before the Court on Plaintiffs's Motion for Summary Judgment [DE-44] and Defendant's Motion for Summary Judgment, or, Alternatively, Partial Summary Judgment [DE-37]. This action arises from a lease agreement between Plaintiff, as landlord, and Defendant, as tenant. Plaintiff's one count complaint alleges a breach of the lease agreement. Both parties have moved for summary judgment based on the undisputed facts and the language of the lease agreement. Because genuine issues of material fact exist regarding whether the parties had an oral agreement for Defendant to become a month-to-month tenant, the motions are denied.

### I. Material Facts

*Events Leading to this Suit*

        Plaintiff owns the premises located at 950 North Krome Avenue, Suite 203, Homestead, Florida 33030 (the Premises). On October 28, 2003, the parties entered into a three-year lease for the Premises (the Lease) with an end date of October 31, 2006 and an annual rent of $32,259.50 to be paid in monthly installments of $2,688.25. (Lease, filed at DE-37-1.) On

November 11, 2003, the parties executed a Rider to the Lease Agreement (Rider).  (Rider, filed at

DE-37-1.)  The Rider provides that it "shall be made a part of the Lease as though originally fully

written therein.  In the event of a conflict, this Rider shall govern." (*Id.*)  On October 18, 2006,

the parties entered into the First Amendment and Renewal of Lease Agreement, which renewed

the lease for another three years with an expiration date of October 31, 2009. (DE-37-1.)

Defendant did not move out after the Lease expired on October 31, 2009.  According to

Defendant, Plaintiff gave Defendant permission to remain on the Premises after the termination

date on a month-to-month basis at 150% of the rent.  (Hartz Affidavit, filed at DE-37-7.)

Defendant paid rent through the termination date and from November 1, 2009 through April 30,

2010, Defendant paid rent at the 150% rate.  (*Id.* at ¶17.)  On March 23, 2010, Defendant sent

Plaintiff a letter stating that it intended to vacate the Premises on or about April 30, 2010.[1] (DE-

46-5.)  Defendant did not pay any rent after it vacated the Premises.  Defendant's Corporate Real

Estate Department never received any notices from Plaintiff regarding non-payment of rent or

any other alleged default after Defendant vacated the Premises.  (Hartz Affidavit at ¶20.)

On November 17, 2009, Plaintiff wrote to Defendant's Deerfield Beach address stating

that Defendant's decision to holdover without permission constituted a renewal of the Lease at

150% of the monthly rent.  (DE-37-9.)  On March 31, 2010, Plaintiff emailed a copy of the

November 17, 2009 letter to Glenn Hartz, who is a Senior Specialist-Real Estate Portfolio for

Defendant and works in Defendant's Corporate Real Estate Office.  (DE-50-1.)  On April 9,

2010, Plaintiff sent another letter to Defendant's Deerfield Beach address stating that even if

---

[1]It appears that Defendant may have made a lump sum payment in the amount of
$10,509.06 with the March 23, 2010 letter.

Defendant vacates the premises on April 30, 2010, Defendant would remain responsible for the rent payments under the Lease. (DE-37-9.)

The Premises was managed by E.F. Hutton Realty Corporation. Tony Salum worked on site as the property manager for E.F. Hutton Realty Corporation. (Abbassi Dep.[2] 33:11-16.) Salum was the "landlord's mouthpiece" and Defendant could rely on representations made by Salum with respect to the Premises. (*Id.* at 52:13-17.) According to Defendant, Plaintiff, through Salum, gave Defendant permission to remain on the Premises after the Termination Date on a month-to-month basis at 150% of the rent. (Hartz Aff. filed at DE-37-7.) However, Salum testified that he never told Defendant that it could remain on the Premises on a month-to-month basis. (Salum Dep. 34:5-11, filed at DE-37-5.) Approximately seven months after Defendant vacated the Premises and stopped paying rent, Plaintiff filed this action to collect unpaid rent. It appears Plaintiff obtained new tenants for the Premises in the fall of 2011.

*The Relevant Terms of the Lease and Rider*

The parties agree the relevant terms of the Lease and Rider are as follows. In the case of a holdover by the tenant, the Lease provides:

> 22. <u>HOLDING OVER:</u>
> If the Tenant retains possession of the Premises or any part thereof after the termination of the term **without the Landlords [sic] permission**, the Tenant shall pay **150%** [of] the monthly rate specified in Section 1 for the time the Tenant thus remains in possession. If the Tenant remains in possession of the Premises, or any part thereof, after the termination of the term, such holding over shall constitute a renewal of this lease at **150%** of the monthly rate. . . .

(DE-37-1 at 13 (emphasis in original).)

---

[2]Abbassi Dep. refers to the deposition of Michael Abbassi, filed at DE-37-2. Michael Abbassi is a managing member of Plaintiff and a Senior Vice President of E.F. Hutton Realty Corp.

If the tenant defaults on the Lease, the landlord has several options, including:

19. <u>LANDLORD'S REMEDIES</u>

\* \* \*

(b) If the Tenant defaults in the payment of Rent or any installment of rent, including any amount treated as additional rent under this lease of any sums payable under this lease as and when due and such default continues for **ten (10)** days after **written** notice, or defaults on the prompt and full performance of any other provision of this lease and such default continues for **twenty (20)** days after **written** notice, . . . or if the Tenant abandons the Premises **and fails to timely pay rent**, then and in any such event the Landlord may, as its election, either terminate the lease and the tenant's right to possession of the Premises or, without terminating this lease, endeavor to relet the Premises.

\* \* \*

(h) Tenant's failure to pay timely the Rent, Additional Rent, or any other sums payable hereunder when due for (2) two consecutive months or for a total of (4) four months in any lease or calendar year, no notice whatsoever is due to Tenant from Landlord.

(DE-37-1 at 10-11 (emphasis in original).)  The Lease further provides, in paragraph 19(c), that

upon the expiration of the Lease, "the Tenant shall surrender possession and vacate the Premises

immediately."   The Lease required that all "notices, demands, requests, consents or approvals

which may or are required to be given by either part to the other shall be in writing."  (DE-37-1 at

12.)

The Rider contains additional relevant provisions:

All notices, demands and requests hereunder shall be sent to Tenant in writing by certified, registered mail, return receipt requested . . . at Quest Diagnostics Clinical Laboratories, Inc., 1300 East Newport Center Drive, Deerfield Beach, FL 33442, Attn: Managing Director with a required copy to Quest Diagnostics, Incorporated, 1201 South Collegeville Road, CV-3041, Collegeville, Pennsylvania 19426, Attn: Corporate Real Estate Department.  If Landlord does not send the required notice copy to Tenant's Corporate Real Estate Department, Landlord hereby waives rights to late rent fees, interest, and any default that requires such notice.

(DE-37-1 at 25.)  There is no dispute that Plaintiff did not send any notice to Defendant's
Corporate Real Estate Department, other than a copy of the November 17, 2009 letter, which was
emailed to Glenn Hartz on March 31, 2010.

## II. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings . . . show that there is no genuine
issue as to any material fact and that the moving party is entitled to a judgment as a matter of
law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *HCA Health Servs. of Ga., Inc.
v. Employers Health Ins. Co.*, 240 F.3d 982, 991 (11th Cir. 2001).  Once the moving party
demonstrates the absence of a genuine issue of material fact, the non-moving party must "come
forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec.
Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting* Fed. R. Civ. P. 56(e)).  The
Court must view the record and all factual inferences therefrom in the light most favorable to the
non-moving party and decide whether "'the evidence presents a sufficient disagreement to
require submission to a jury or whether it is so one-sided that one party must prevail as a matter
of law.'" *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (*quoting Anderson*, 477
U.S. at 251-52)).

In opposing a motion for summary judgment, the non-moving party may not rely solely
on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and
admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P.
56(c), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  A mere "scintilla" of
evidence supporting the opposing party's position will not suffice; instead, there must be a

sufficient showing that the jury could reasonably find for that party. *Anderson*, 477 U.S. at 252; *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

## III. Discussion

Both sides have moved for summary judgment. Plaintiff asserts that it is entitled to summary judgment because the Defendant's holdover resulted in an automatic renewal of the Lease for another three-year term. Thus, Plaintiff argues it is entitled to the rent for the remainder of the lease term, plus administrative fees and the costs incurred to secure new tenants for the Premises. Defendant asserts that it is entitled to summary judgment because Plaintiff failed to comply with the notice requirements in the Lease and Rider and thus, Plaintiff waived its rights. In the alternative, Defendant seeks partial summary judgment limiting Plaintiff's damages because of its failure to mitigate.

### A. *Defendant is Not Entitled to Summary Judgment Based on the Notice Requirement*

Defendant asserts that it is entitled to summary judgment because Plaintiff waived its right to collect any allegedly unpaid rent by failing to send notice to Defendant's Corporate Real Estate Department. Plaintiff sent both the November 17, 2009 and April 9, 2010 letters, which stated that Defendant's holdover constituted a renewal of the Lease, to Defendant's Deerfield Beach address but not the Corporate Real Estate Department. Plaintiff never sent to either address any notice that Defendant was in default for failing to pay rent. The Rider states that: "If Landlord does not send the required notice copy to Tenant's Corporate Real Estate Department, Landlord hereby waives rights to late rent fees, interest, and any default that requires such notice." Based on this language, Defendant asserts that Plaintiff has waived any right to pursue Defendant for unpaid rents because there is no dispute that Plaintiff did not provide written

6

notice by certified, registered mail, return receipt requested to Defendant's Corporate Real Estate Department.

In response, Plaintiff asserts that it was not required to give notice regarding the Holdover Provision and, regardless, it did sent a copy of the November 17, 2009 letter to the Corporate Real Estate Department when it emailed the letter to Glenn Hartz in March 2010. Clearly emailing the letter would not constitute valid notice under a provision that requires notice to be sent by certified, registered mail, return receipt requested. However, the notice provision states that "[a]ll notices, demands and requests *hereunder*" (emphasis added) must be sent to the Corporate Real Estate Department. There is nothing in the Lease that required Plaintiff to give Defendant notice under the Holdover Provision. Thus, the November 17, 2009 and April 9, 2010 letters were not notices required by the Lease and, consequently, did not have to be served in accordance with the Lease's notice provision.

Plaintiff also argues that it was not required to give notice regarding unpaid rent because under paragraph 19(h) of the Lease no notice is required if Defendant's failure to pay rent was for more than two consecutive months. In response, Defendant asserts that Plaintiff ignores the language of paragraph 19(b) which requires notice be given after 10 days of non-payment of rent. However, Defendant misreads paragraph 19(b). Paragraph 19(b) does not state that Plaintiff must give notice 10 days after Defendant fails to pay rent. Paragraph 19(b) sets out certain remedies that Plaintiff has if Defendant fails to cure its default 10 days after it has received written notice. Thus, paragraph 19(b) does not require notice in the manner Defendant argues. Furthermore, paragraph 19(b) and 19(h) are not conflicting and the language of paragraph 19(h) is unambiguous. Thus, under paragraph 19(h) Plaintiff was not required to give Defendant notice

7

because Defendant failed to pay rent for more than two consecutive months.[3]  Consequently,

Defendant is not entitled to summary judgment based on Plaintiff's failure to give notice.

### B.  Neither Party is Entitled to Summary Judgment Based on the Holdover Provision

Both parties assert that the Lease is unambiguous and requires summary judgment in their

favor based on the Holdover Provision.  Plaintiff asserts that, pursuant to the Holdover Provision,

when Defendant remained on the Premises after the expiration of the renewed lease term, the

Lease automatically renewed for an additional Lease term of three years.  Thus, Plaintiff argues it

is entitled to rent for the entire lease term.  Defendant, on the other hand, asserts that under the

Holdover Provision it is only responsible for rent during the time that it was in possession of the

Premises.  Despite these radically different interpretations of the Holdover Provision both sides

state that the provision is not ambiguous.

A contract provision is ambiguous when the relevant language is "susceptible to two

different interpretations, each one of which is reasonably inferred from the terms of the contract."

*Miller v. Kase*, 789 So. 2d 1095, 1097-98 (Fla. 4th DCA 2001).  However, if the terms can be

reconciled, the contract is not ambiguous.  *Lloyds Underwriters v. Netterstrom*, 17 So. 2d 732,

735 (Fla. 1st DCA 2009).  Thus, when "a contract contains apparently conflicting clauses, [a

court] must interpret it in a manner that would reconcile the conflicting clauses, if possible." *Id.*

On it face, the Holdover Provision appears ambiguous because it would seem to give two

different outcomes upon a holdover by the tenant: (1) the tenant is responsible for 150% of the

---

[3]The Court also notes that under paragraph 19(b), no notice is required if "the Tenant abandons the Premises and fails to timely pay rent." (emphasis omitted).  While it is a question of fact whether Defendant "abandoned" the Premises, if so Plaintiff was not required to give notice of non-payment of the rent.

rent while it remains in possession of the premises and (2) the lease automatically renews for a three-year term, which would require the tenant to pay 150% of the rent for three-years, whether in possession or not.  However, the first sentence of the Holdover Provision contains the phrase "without the Landlords [sic] permission;" whereas, the second sentence does not contain this phrase.  Thus, the two sentences of the Holdover Provision can be reconciled by interpreting the second sentence to apply when the tenant's holdover is *with the Landlord's permission.*[4]  It is clear that a genuine issue of material fact exists as to whether Defendant's holdover was with or without the permission of Plaintiff.

If Defendant had Plaintiff's permission to holdover, an additional issue of material fact exists as to whether that permission constituted a modification of the Lease.  Defendant has presented evidence that Plaintiff orally agreed to a month-to-month lease after the Lease expired and Plaintiff has presented evidence that it did not make such an agreement.  Plaintiff argues that the parties could not orally modify the Lease because the Lease contains an integration or merger clause, paragraph 24(h), and because paragraph 21 states that "[a]ll consents and approvals provided for herein must be in writing to be valid."  However, the merger clause applies to the situation at the time the Lease was executed and the other clause, requiring all modifications be in writing, could be verbally modified.  *See J. Lynn Construction, Inc. v. Fairways at Boca Golf & Tennis Condominium Association,* Inc., 962 So. 2d 928, 930 (Fla. 4th DCA 2007) (stating that "[w]ritten contracts can be modified by subsequent oral agreement of the parties even though the

---

[4]The Court recognizes that commercially this interpretation of the Holdover Provision does not make a lot of sense because if the tenant obtained the landlord's permission to holdover, it is likely that the parties would have also agreed to the rent and the amount of time of the holdover.  However, it is beyond the Court's authority to rewrite a lease so that it makes commercial sense.

written contract purports to prohibit such modification").[5]   The parties have not provided sufficient evidence for the Court to determine whether the parties verbally modified the Lease and whether such a verbal modification was permissible under the circumstances.  Thus, because genuine issues of material fact exist summary judgment is not appropriate.

### C.   Summary Judgment is Not Appropriate on the Mitigation Issue

In the alternative to summary judgment, Defendant seeks partial summary judgment limiting Plaintiff's damages based on its failure to mitigate.  However, discovery is still ongoing regarding the mitigation issue.  *See* DE-99.  Consequently, summary judgment is not appropriate at this time regarding mitigation.

### D.   Defendant's Rule 56(d) Motion is Denied

In response to Plaintiff's Motion for Summary Judgment, Defendant's have moved to deny the motion pursuant to Federal Rule of Civil Procedure 56(d).  Rule 56(d) states:

> (d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

---

[5]In *J. Lynn Construction*, the court, quoting itself quoting the Florida Supreme Court, stated:

> [a] written contract ... may be altered or modified by an oral agreement if the letter has been accepted and acted upon by the parties in such manner as would work a fraud on either party to refuse to enforce it.... An oral modification under these circumstances is permissible even though there was in the written contract a provision prohibiting its alteration except in writing.

962 So. 2d at 930 (quoting *King Partitions & Drywall, Inc., v. Donner Enterprises, Inc.*, 464 So.2d 715, 716 (Fla. 4th DCA 1985) (quoting *Prof'l Ins. Corp. v. Cahill*, 90 So.2d 916, 918 (Fla.1956)).

(1) defer considering the motion or deny it;
(2) allow time to obtain affidavits or declarations or to take discovery; or
(3) issue any other appropriate order.

In this case, the facts that Defendant asserts are unavailable relate to information contained on

Salum's computer hard drive, which was discarded after the hard drive was infected with a virus.

Thus, no amount of discovery will enable Defendant's to recover the information contained on

the hard drive.  Furthermore, the fact that Plaintiff discarded the hard drive is the partial basis of

a motion for sanctions filed by Defendant.  Because the information on the hard drive is

undiscoverable now and in the future, Rule 56(d) provides no basis for relief.

Accordingly, it is hereby

ORDERED that:

1.  Plaintiffs's Motion for Summary Judgment [DE-44] is DENIED.

2.  Defendant's Motion for Summary Judgment, or, Alternatively, Partial Summary

Judgment [DE-37] is DENIED.

3.  Defendant's Rule 56(d) Motion [DE-60] is DENIED.

DONE and ORDERED in Miami, Florida, this 16 day of March, 2012.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:    All Counsel of Record

11